FENWICK MACHINERY, INC., PLAINTIFF, v. A. TOMAE & SONS, INC., ETC., DEFENDANT THIRD PARTY PLAINTIFF, v. THE AMERICAN INSURANCE COMPANY, THIRD PARTY DEFENDANT-APPELLANT, AND BROUNELL, KRAMER, WALDOR, INSURANCE BROKERS, THIRD-PARTY DEFENDANT-RESPONDENT, AND PINKERTON'S INC. AND TENDUN CONSTRUCTORS, THIRD PARTY DEFENDANTS.

Argued March 19, 1978—Decided May 16, 1979.

Pashman, J., dissented with an opinion.

Handler, J., dissented in an opinion in which Pashman, J., joined.

*Mr. Richard D. Catenacci* argued the cause for third party defendant-appellant (*Messrs. Connell, Foley & Geiser,* attorneys; *Mr. Catenacci,* of counsel and on the brief).

*Mr. Leonard Rosenstein* argued the cause for third party defendant-respondent (*Messrs. Feuerstein, Sachs & Maitlin,* attorneys; *Mr. Rosenstein,* on the brief).

PER CURIAM. ■ We reverse essentially for the reasons expressed in the dissenting opinion of Judge Michels below. He concluded, as do we, that "the policy of insurance issued by third-party defendant The American Insurance Company (American) to defendant and third-party plaintiff A. Tomae & Sons, Inc. (Tomae) did not provide coverage for the unscheduled contractors' equipment owned by the plaintiff Fenwick Machinery, Inc. (Fenwick) but leased to Tomae."

■ We emphasize the point that we are not here concerned with and hence need not pass upon the question of whether the policy language is free of ambiguity when tested by "[an] objectively reasonable interpretation of the average policyholder," *DiOrio v. New Jersey Manufacturers Ins. Co.,* 79 *N. J.* 257 (1979). Here the third-party defendants Brounell, Kramer, Waldor, Insurance Brokers, held themselves out as experienced in the field. Specifically, they are "expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which [their] principal seeks to be protected." *Rider v. Lynch,* 42 *N. J.* 465, 476 (1964); *Bates v. Gambino,* 72

*N. J.* 219, 224–25 (1977). Surely the brokers, charged with this superior knowledge, cannot take advantage of whatever deficiencies might be uncovered in the policy language when viewed from the perspective of an unschooled and unwary policyholder. *Cf., e. g., Kievit v. Loyal Protective Life Ins. Co.,* 34 *N. J.* 475, 482–83 (1961) ; *Bryan Const. Co. v. Employers Surplus Lines Ins. Co.,* 60 *N. J.* 375, 377–78 (1972).

Although the question has not been raised before this court, a judgment in favor of A. Tomae & Sons, Inc. against both its brokers, Brounell, Kramer, Waldor, and defendant The American Insurance Company, appears incongruous.

Reversed and remanded for reinstatement of judgment of indemnification in favor of third-party defendant, The American Insurance Company, against third-party defendants, Brounell, Kramer, Waldor.

PASHMAN, J., dissenting. I join fully in the dissenting opinion which Justice Handler has filed in this case. The insurance contract here at issue was clearly ambiguous as to whether coverage was provided for the leased equipment which was destroyed. The judgment of the Appellate Division should therefore be affirmed.

I only wish to add a few words in order to clarify the basis underlying the majority's holding. The majority correctly notes that the sole dispute in this appeal involves the insurance company and its broker, the insured having already been guaranteed compensation for his loss. Inasmuch as both parties to the controversy are insurance experts, it appears to hold that there is no need to call into play the protective rules and mechanisms which we have carefully designed to guarantee maximum coverage to the public. *See, e. g., Perrine v. Prudential Ins. Co.,* 56 *N. J.* 120, 126 (1970) ; *Allen v. Metropolitan Life Ins. Co.,* 44 *N. J.* 294, 305 (1965) ; *Bauman v. Royal Indem. Co.,* 36 *N. J.* 12, 25 (1961) ; *Mazzilli v. Accident & Cas. Ins. Co.,* 35 *N. J.* 1, 7–8 (1961).

Although I disagree with its conclusions in this regard, it is clear that should a subsequent controversy arise involving a direct dispute between an insured member of the public and the insurer, the latter would not likely prevail. In such a case, the "reasonable expectations" test would unquestionably be applicable. *See, e. g., Perrine v. Prudential Ins. Co., supra; Allen v. Metropolitan Life Ins. Co., supra; Bauman v. Royal Indem. Co., supra; Kievit v. Loyal Protective Life Ins. Co.,* 34 *N. J.* 475, 482 (1961). There can be no doubt but that the contract clauses here at issue are "ambiguous" insofar as the average consumer of insurance is concerned.

HANDLER, J., dissenting. As this litigation has finally wended its way to this Court, the question remaining is which of two third-party defendants, the insurance company, American Insurance Company, (American) or the insurance brokers who sold the insured its policy, Brounell, Kramer, Waldor, (Brounell) must bear ultimate liability for the losses sustained by the insured. Directly affecting the answer to this question is whether or not American's Contractors' Equipment Floater policy provided coverage to the trial defendant, A. Tomae and Sons, Inc. (Tomae) for damages to construction equipment Tomae had leased from the trial plaintiff Fenwick Machinery, Inc. (Fenwick).

The trial judge found American's policy by its terms did not provide coverage but determined that since Tomae had relied on Brounell's representation that Tomae would be protected under the policy, both Brounell, as agent, and American, as its principal, were liable to Tomae. The trial judge further concluded that since Brounell was negligent by misinforming Tomae that coverage was provided, Brounell was required to indemnify American for the entire judgment.

The Appellate Division, in a 2–1 decision, reversed and ordered entry of a judgment in favor of Brounell and Tomae against American. The majority was of the view that the policy clearly afforded coverage; alternatively, the appellate court suggested the policy was ambiguous and therefore

was to be construed to grant protection for the insured. In finding coverage, the Appellate Division obviated the need to consider whether Brounell should indemnify American. The dissent found the policy unambiguously excluded coverage. The majority of this Court has now adopted the dissenting view that the insurance policy unambiguously excluded coverage for the type of loss sustained in this case and that the broker was required to indemnify the insurance company for the judgment entered against it. I disagree.

In my view the insurance contract in question is ambiguous. Paragraph 1 provides:

1. PROPERTY INSURED. This policy insures Contractors' Equipment (as set forth in schedule on or attached to this policy) the property of the Insured or the property of others held by the Insured and for which the Insured is liable.

Paragraph 9 states:

9. ADDITIONALLY ACQUIRED PROPERTY. Subject otherwise to all its terms and conditions, this policy is extended to cover additional items of a nature similar to those scheduled herein or usually covered under a Contractors' Equipment Floater, the property of the Insured, which items have been acquired subsequent to the attachment date and during the term of this policy. In consideration of this extension the Insured agrees to report such additions within thirty (30) days from the date acquired and to pay premium thereon from the date acquired at pro-rata of the policy rate. It is specifically agreed and understood, however, that this policy shall cease to cover such additional items if they are not reported to the Company within the said thirty (30) day period. The Company shall not be liable under the provisions of this clause for more than the actual cash value of such property, and in no event for more than 10% of the total amount of insurance under this policy or $25,000.00, whichever is the lesser.

It is undisputed that the construction equipment at issue here was vandalized about eight days after Tomae acquired possession under a lease from Fenwick. Since the equipment was never expressly scheduled on the policy, the central issue in the litigation at the trial level was whether the

equipment was nevertheless covered under paragraph 9 as additionally acquired property.

American contends that paragraph applies only to property *owned* by the insured and not *leased* equipment. The insurance company points out that while paragraph 1 covers both "property of the Insured" and "the property of others held by the Insured * * *" listed on the policy schedule, paragraph 9, covering items "* * * acquired subsequent to the attachment date * * * of this policy" refers only to one of the categories of property dealt with in paragraph 1, namely, "property of the insured". Accordingly, it maintains the insurance contract is unambiguous and the insured was not covered with respect to unlisted property not actually owned by the insured.

Brounell counters that paragraph 9 initially states "This policy is extended to cover additional items of a nature similar to those scheduled herein or usually covered under a Contractors' Equipment Floater * * *." The brokers point out that since the items which would be "scheduled herein" include both leased and owned equipment, paragraph 9 could be read to apply to both. In addition, the inclusion of leased equipment in paragraph 9 is suggested by reference to the provision in paragraph 1 for "property of others held by the insured" as well as by the provision in paragraph 9 of property "usually covered under a Contractors' Equipment Floater.

The plausibility of both positions points up the ambiguity of the contract. While the Contractors' Equipment Floater policy involved in this case is not as common as the ordinary homeowners' or automobile insurance policy and deals with matters of some complexity, it appears that a reasonably able draftsman could have eliminated the ambiguity as to the coverage of equipment acquired by lease. This evidently was done in favor of coverage under Tomae's previous policy issued by Insurance Company of North America. It could have been done with like clarity to exclude coverage in this case.

The key issue at the inception of the litigation was whether the American policy provided coverage to the insured for the particular loss. If that question had yet to be resolved we would undoubtedly invoke the protective rules which have been fashioned to assure fair insurance coverage to the consuming public. "[I]n evaluating the insurer's claim as to the meaning of the language under study, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question * * *." *Mazzilli v. Accident & Cas. Ins. Co.*, 35 *N. J.* 1, 7 (1961). Moreover, when interpreting a particular provision " 'the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have rejected those expectations' ". *Bryan Const. Co. v. Employers' Surplus Lines Co.*, 60 *N. J.* 375, 378 (1972) (quoting from *Keeton, Insurance Law* 351 (1971)); also *DiOrio v. New Jersey Manufacturers Ins. Co.*, 79 *N. J.* 257, 269 (1979); *Perrine v. Prudential Ins. Co.*, 56 *N. J.* 120, 126–127 (1970); *Allen v. Metropolitan Life Ins. Co.*, 44 *N. J.* 294, 305–306 (1965); *Bauman v. Royal Indem. Co.*, 36 *N. J.* 12, 25 (1961); *Kievit v. Loyal Protective Life Ins. Co.*, 34 *N. J.* 475, 482–483 (1961).

Where a policy is ambiguous it will be construed against the insurer in favor of the insured to furnish protection. *Remsden v. Dependable Ins. Co.*, 71 *N. J.* 587, 589 (1976); *Bryan Const. Co. v. Employers' Surplus Lines, supra*, 60 *N. J.* at 377; *Butler v. Bonner & Barnewall, Inc.*, 56 *N. J.* 567, 576 (1970); *Ohio Cas. Ins. Co. v. Flanagin*, 44 *N. J.* 504, 513–514 (1965); *Mazzilli v. Accident & Cas. Ins. Co., supra*. The existence of coverage in this case distinguishes it from one where a broker should be held ultimately liable to the insured for negligently procuring a policy which plainly does not provide the coverage which the insured had reasonably expected to receive. See, *e. g., Rider v. Lynch*, 42 *N. J.*

465 (1964). In such a situation, the broker, and not the insurance company would be solely responsible.

American Insurance Company has conceded that if there is coverage, it is solely liable. It should make no difference whether that coverage is predicated on the clear language of the insurance contract or upon a contract implied from the reasonable expectations of an insured generated in part by ambiguous terms in the insurance policy. The insured was entitled to coverage under the policy and, as noted, that obligation has been recognized and paid by the insurer. Therefore, I would affirm the Appellate Division's judgment holding American exclusively responsible for the insured's loss.

*For reversal and remandment*—Justices MOUNTAIN, JACOBS, CLIFFORD and SCHREIBER—4.

*For affirmance*—Justices PASHMAN and HANDLER—2.