197 N.J. Super. 339 (1984)
484 A.2d 1292
BARBARA CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
BOB MANEELY INSURANCE AGENCY AND STOCKWELL-KNIGHT COMPANY, DEFENDANTS-RESPONDENTS, AND CONTINENTAL CASUALTY COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1984.
Decided December 12, 1984.
*340 Before Judges ANTELL, J.H. COLEMAN and SIMPSON.
Mark Soifer argued the cause for appellant (Horn, Kaplan, Goldberg, Gorny & Daniels, attorneys; Mark Soifer on the brief).
*341 Warren W. Faulk argued the cause for respondent Bob Maneely Insurance Agency (Brown, Connery, Kulp, Wille, Purnell & Greene, attorneys; Warren W. Faulk on the brief).
Paul F. Gilligan, Jr. argued the cause for respondent Stockwell-Knight Company (Montano, Summers, Mullen, Manuel & Ownes, attorneys; Paul F. Gilligan on the brief).
Lee A. Solomon argued the cause for respondent Barbara Corporation (D. Vincent Lazzaro, attorney, and on the brief).
The opinion of the court was delivered by COLEMAN, J.H., J.A.D.
The question raised by this appeal is whether an insurance company is obligated to advise an insured of the expiration of a fire insurance policy. The trial judge granted the insured summary judgment holding that the company is so obligated. The insurance company has appealed. We now affirm for the reasons which follow.
The facts in this case are undisputed. On January 26, 1979 plaintiff, Barbara Corporation, purchased a policy of fire insurance from defendant Continental insuring a car wash owned by plaintiff, located in Gloucester Township, N.J. The policy was obtained through defendant Maneely who was acting pursuant to a "Solicitor's Agreement" with defendant Stockwell. Stockwell issued the policy pursuant to a "Preferred Agency Agreement" with Continental.
Upon expiration of the initial policy's one year term, Stockwell forwarded a new policy and an invoice for premium to Maneely on January 15, 1980 who then forwarded a premium bill to plaintiff. Plaintiff paid the premium on January 23, 1980 thereby renewing the policy for an additional year. At the end of the second year, however, no demand for premium or notice in any other form was forwarded to plaintiff advising that the policy would expire on January 26, 1981. A $95,000 fire loss occurred at the premises on June 13, 1981. Plaintiff requested payment under the policy and Continental disclaimed, contending *342 the policy expired January 26, 1981. All parties agree that the fire damage would have been covered by the policy had it been renewed.
Plaintiff filed a complaint in the Law Division for breach of contract of insurance. Defendants cross-claimed for contribution and indemnification. Cross motions for summary judgments were filed. R. 4:46. The Law Division granted summary judgment to plaintiff, Maneely and Stockwell.
In this appeal Continental argues that N.J.A.C. 11:1-5.5 is inapplicable to this case. The enabling legislation for the foregoing regulation is N.J.S.A. 17:29C-1 which grants the Commissioner of Insurance the authority to promulgate a rule or regulation to require insurance companies doing business in this State to include a provision in the policy requiring the insurer to give 30 days written notice to the insured of an intent not to renew a fire insurance policy. The statute provides:
17:29C-1. Policy provision; written notice
In addition to the powers conferred upon him by any other law, the Commissioner of Banking and Insurance is hereby authorized and empowered to direct, by rule or regulation as hereinafter provided, that insurance companies organized under the laws of this State or organized to do business in this State, shall include provisions in policies of insurance written by any such company in this State, whereby 30 days' written notice shall be given; (1) to the insured, of the cancellation of any such policy; and, (2) to any designated mortgagee not named therein as the insured of the cancellation of any interest in such policy; and, (3) to the insured, of intent not to renew any such policy.
The Commissioner promulgated such a regulation requiring 30 days notice of cancellation or an intent not to renew fire and certain casualty insurance coverage. That regulation, known as N.J.A.C. 11:1-5.5, as here pertinent, provides:
11:1-5.5 Notice of cancellation and nonrenewal of fire and casualty coverage
(a) All fire and casualty policies of insurance, except accident and health policies, shall provide for the issuing company to give:
1. Thirty days' written notice to the assured of the cancellation of any policy;
2. Thirty days' written notice of cancellation of any policy to any mortgagee mentioned in said policy; and

*343 3. Thirty days' written notice to the assured of said company's intent not to renew any policy.
(b) Provisions of policies to be effective on or after July 1, 1977, which are issued by any company doing business in New Jersey and provide for less than 30 days' notice of cancellation and nonrenewal shall be null and void, with the following exceptions: ....
Continental argues that Citta v. Camden Fire Insurance Assoc., Inc., 152 N.J. Super. 76 (App.Div. 1977) precludes application of N.J.A.C. 11:1-5.5(a)3 to this case. We disagree. The question presented in Citta was identical to the question posited here  is the carrier obligated to notify the insured of the expiration of an insurance policy. We note that although N.J.A.C. 11:1-5.5 was promulgated between the time Citta was argued and decided, see 9 N.J.R. 282(b) (reported on June 9, 1977), it did not come to the attention of the Court. N.J.A.C. 11:1-5.5 became effective July 1, 1977 and Citta was decided on August 4, 1977. Even if the court had been aware of the regulation, it would have had no impact on the results there because the regulation did not apply to policies issued before July 1, 1977. See N.J.A.C. 11:1-5.5(b). Since Citta was argued on March 28, 1977 it seems reasonable to assume that the policy there involved was issued before July 1, 1977. Hence, Citta does not require a reversal. On the contrary, the decision in Citta was based on the absence of a regulation such as N.J.A.C. 11:1-5.5 covering policies issued before July 1, 1977. We read Citta as strongly suggesting that had there been a regulation, the end result would have been different.
In our endeavor to determine the scope of N.J.A.C. 11:1-5.5, we observe that the regulation uses the words of the enabling legislation. The question we must therefore answer is what did the legislature mean by an "intent not to renew any policy." To determine the legislatively intended meaning, the sense of the statute should be "collected from its object and the nature of the subject matter, the contextual setting, and the statutes in pari materia; and the import of a particular word or phrase is controlled accordingly." Giles v. Gassert, 23 N.J. 22, 33-34 (1956). The object and nature of the enabling legislation *344 which permitted promulgation of the regulation here involved was stated in the title or preamble to L. 1968, c. 131 that created N.J.S.A. 17:29C-1. That title or preamble describes the enactment as "an act granting certain emergency powers to the Commissioner of Banking and Insurance relating to the cancellation and renewal of insurance policies." (Emphasis supplied). Similarly, N.J.S.A. 17:29C-6 was enacted by the same session of the Legislature to deal with cancellations and nonrenewal of other casualty insurance policies. The title or preamble to L. 1968, c. 158 which created N.J.S.A. 17:29C-6 describes that enactment as "an act concerning cancellation and nonrenewal of automobile liability, physical damage or collision insurance policies." (Emphasis supplied).
N.J.S.A. 17:29C-1 and N.J.S.A. 17:29C-6 were enacted to establish minimum time periods for notice of renewal, nonrenewal and cancellation of certain casualty and fire insurance policies. We find the two statutes are in pari materia. The legislative definition of "renew" in N.J.S.A. 17:29C-6(E) should also control the meaning of "renew" in N.J.S.A. 17:29C-1 and N.J.A.C. 11:1-5.5. As here pertinent, N.J.S.A. 17:29C-6(E) states:
"Renewal" or "to renew" means the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term; ....
The fact that the Legislature chose to vest the Commissioner of Insurance with the discretion of whether to require the notice pursuant to N.J.S.A. 17:29C-1 rather than legislatively mandating the notice requirement as it did for automobile policies is not material to our analysis. What is material is the legislative desire to avoid lapses in coverage for want of notice.
Having established that "renew" within the contemplation of N.J.A.C. 11:1-5.5(a)3 means the issuance and delivery of a policy replacing an expiring policy at the end of its term by the same insurance company, we must now decide what the legislature meant by an intent not to renew a policy. As previously *345 noted, the title or preamble to the enabling legislation states that the legislature intended to vest in the Commissioner of Insurance emergency powers to deal with renewals and cancellations of fire and nonautomobile casualty insurance policies. This was remedial legislation designed to minimize lapses in coverage regardless of whether the cancellation or nonrenewal was caused by underwriting factors or oversight by the insured. This remedial legislation should be construed to give the words used the most extensive meaning to which they are reasonably susceptible. Global American Ins. Managers v. Perera Co., Inc., 137 N.J. Super. 377, 386 (Ch.Div. 1975). Statutory provisions regulating insurance should be construed to accord the insured the broadest range of protection. Purdy v. Nationwide Mut. Ins. Co., 184 N.J. Super. 123, 128 (App.Div. 1982).
Application of the foregoing principles governing statutory construction and the plain meaning of the statute persuade us to conclude that N.J.A.C. 11:1-5.5(a)(3) not only required the insurer to give notice of its intention not to renew based on underwriting considerations, but also required the insurer to give notice to the insured 30 days prior to the expiration of the policy of its intention not to renew should the renewal premium not be paid on or before the expiration date. We read the requirement for notification to apply whether the intent not to renew is absolute, such as for underwriting reasons, or only conditional, depending, as appears to be the case here, upon the insured's failure to pay the premium. Once the insured receives notice that the carrier has either an absolute or conditional intent not to renew, the insured is then on notice to obtain other coverage or satisfy the preconditions in order to obtain a replacement policy. This construction of N.J.S.A. 17:29C-1 and N.J.A.C. 11:1-5.5(a)(3) is necessary to effectuate fully the legislative intent  the prevention of lapse in coverage.
Even though Continental argues that it intended to renew the policy, it is clear that this intent was conditioned *346 upon payment of premium. The fire loss occurred approximately six months past the renewal date and Continental had done nothing to evidence an intent not to renew. The effect of this silence, misleading plaintiff into believing it was insured, is one of the mischiefs sought to be suppressed by the regulation. Surely the legislature would not undertake to prevent lapses in coverage while at the same time permit lapses by allowing the insurer to remain silent as to when the next premium is due. We are fully satisfied that the legislature intended to place the burden on the insurer to notify the insured that his policy will soon expire unless the next premium is paid. We do not regard this as a heavy burden on the insurer given the widespread use of computer technology in the insurance industry. The obligation has been placed on the carrier by the regulation to give the required notice. Failure to do so requires automatic renewal regardless of the conduct of brokers or agents.
Finally, Continental argues the trial judge erred by granting summary judgment dismissing its cross claim against Maneely and Stockwell. The court reasoned that the damages suffered by Continental are exactly the same as they would have been if Continental had renewed the policy. We agree with the trial court. Continental's failure to comply with N.J.A.C. 11:1-5.5 created a continuation of the policy. Continental freely admits that it would have renewed the policy if the renewal had been properly processed. The regulation, however, places the notice obligation on the insurer, not the broker or agent. Since plaintiff's fire loss damages are limited to the terms of the insurance contract, the alleged negligence of Maneely and Stockwell could not proximately contribute to the contractual loss payable by Continental.
The order granting summary judgment is affirmed.
SIMPSON, J.A.D., dissenting.
I respectfully dissent from the majority affirmance of the summary judgments granted in favor of all parties against *347 Continental Casualty Company. In my view N.J.A.C. 11:1-5.5(a) and (b) cannot be construed to require issuing companies to give notice of expiration of fire and casualty policies of insurance.
N.J.S.A. 17:29C-1 enables the Commissioner of Insurance to require all insurers to provide in all policies that 30 days written notice shall be given of "cancellation" or "intent not to renew" any policy. This authority has been exercised by the Commissioner in the cited regulation as to "all fire and casualty policies." Underwriting risk considerations are obviously involved in a decision to cancel an existing policy or not to renew an expiring policy, and the 30 days notice requirement provides time for an insured to seek other coverage. Nothing in the statute or regulations requires notice of expiration of a fire or casualty policy. Generally, courts cannot disregard a plain, unambiguous statement in a policy as to the expiration date. 12A Appleman, Insurance Law and Practice, § 7175 at 19 (1981). And since an insured is charged with knowledge of a stated expiration date, it is generally held that neither an insurer nor its agent has a legal duty to give notice of the expiration of a policy or to renew it automatically. 13A Appleman, Insurance Law and Practice, § 7642 at 410 (1976). In this case, it is undisputed that Continental would have renewed the policy had the premium been paid. Since no notice of intent not to renew had been given, plaintiff had a right to renew provided it paid the premium. It may be that Stockwell and/or Maneely is liable to plaintiff for failure to renew the policy and forward the premium bill  as had been done in the prior year  but nothing in the statute, regulations, or prior course of conduct required Continental to send a reminder notice of the policy expiration date.
Citta v. Camden Fire Ins. Assoc., Inc., 152 N.J. Super. 76 (App.Div. 1977), is inapposite because the Commissioner had not yet issued N.J.A.C. 11:1-5.5. In subsequently implementing the statute the Commissioner chose to limit the notice requirement *348 to "cancellation" or "intent not to renew" and not to require "notice of expiration." Nor has the Commissioner amended the regulation since the Citta decision. This strongly indicates a determination that such a requirement is contra-indicated. The majority notes the availability of computer technology as limiting the burden of a notice of expiration requirement, but there is a cost factor involved that must otherwise be borne by all policyholders. Presumably a cost/benefit analysis has been made by the Commissioner and he has not seen fit to implement such a requirement. Computers are also available to insureds and insurance agents and in this case it appears that all were negligent except Continental. Under the circumstances, it is not for the judiciary to transfer the resultant costs to all other policyholders by creating a notice of expiration obligation on the part of the insurer.
The definition of "Renewal" or "to renew" in N.J.S.A. 17:29C-6 relates only to automobile policies. Although the same session of the Legislature passed both N.J.S.A. 17:29C-1 and N.J.S.A. 17:29C-6, the former was part of chapter 131 of the Laws of 1968 while the latter was part of chapter 158. Automobile insurance has always been treated differently than other types, probably because of the interests of innocent members of the public who are non-contracting parties but are often the victims of the negligent operation of covered or uninsured vehicles. Thus, N.J.A.C. 11:3-8.2 requires, as to an automobile policy, an offer to renew (which is similar in effect to a notice of expiration) unless a valid notice of non-renewal has been sent by the insurer to the insured. No similar requirement appears to be mandated for any other type of insurance coverage.
Since plaintiff has claims against both agents, and the agents in turn have crossclaims against each other and Continental, I would reverse the summary judgments and remand for trial on all other issues.